Approved:  _____ / _____
JACOB H. GUTWILLIG / MICHAEL D. LOCKARD
Assistant United States Attorneys

Before:    THE HONORABLE BARBARA MOSES
           United State Magistrate Judge
           Southern District of New York

**22 MAG 2831**

- - - - - - - - - - - - - - - - - - - x
                                      :
UNITED STATES OF AMERICA              :    **SEALED COMPLAINT**
                                      :
         - v. -                       :    Violation of
                                      :    18 U.S.C. §§ 1028A,
HOSAME DERGASLY,                      :    1543, 1546, & 2
                                      :
              Defendant.              :    COUNTY OF OFFENSE:
                                      :    NEW YORK
- - - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

SPECIAL AGENT JACQUELINE SMITH, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation (the "FBI"), and charges as follows:

### COUNT ONE
(Forgery of Passports)

1. From at least in or about January 2022 up to and including the date of this Complaint, in the Southern District of New York and elsewhere, HOSAME DERGASLY, the defendant, willfully and knowingly did make, forge, counterfeit, mutilate, and alter a passport and instrument purporting to be a passport, with intent that the same may be used; and did use, attempt to use, and furnish to another for use such false, forged, counterfeited, mutilated, and altered passport and instrument purporting to be a passport; to wit, DERGASLY knowingly obtained, possessed, and furnished false and forged passports to another person for the purpose of using the passports to travel and to open bank accounts.

(Title 18, United States Code, Sections 1543 & 2.)

**COUNT TWO**
(Fraud and Misuse of Passports)

2. From at least in or about January 2022 up to and including the date of this Complaint, in the Southern District of New York and elsewhere, HOSAME DERGASLY, the defendant, knowingly did forge, counterfeit, alter, and falsely make a document prescribed by statute and regulation for entry into and as evidence of authorized stay and employment in the United States, and did utter, use, attempt to use, possess, obtain, accept, and receive such document prescribed by statute and regulation for entry into and as evidence of authorized stay and employment in the United States, knowing it to be forged, counterfeited, altered, and falsely made; to wit, DERGASLY knowingly obtained, possessed, and furnished false and forged passports to another person for the purpose of using the passports to travel and to open bank accounts.

(Title 18, United States Code, Sections 1546(a) & 2.)

**COUNT THREE**
(Aggravated Identity Theft)

3. From at least in or about January 2022 up to and including the date of this Complaint, in the Southern District of New York and elsewhere, HOSAME DERGASLY, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person , during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c); to wit, DERGASLY knowingly transferred, possessed, and used the name, biographical information, and identification document number of another person during and in relation to the offenses charged in Counts One and Two of this Complaint.

(Title 18, United States Code, Sections 1028A & 2.)

The bases for my knowledge and for the foregoing charges, are, in part, as follows:

4. I am a Special Agent with the FBI. In the course of my duties with the FBI, I received training in, and participated in, investigations of violations of U.S. criminal laws.

5. I have been personally involved in the investigation of this matter. This affidavit is based upon my own knowledge, my conversations with others, including other law enforcement

agents, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. In the course of my investigation, I have learned, among other things, the following:

6. On or about January 11, 2022, an undercover law enforcement agent posing as an individual engaged in money laundering for drug trafficking organizations (the "UC") met with HOSAME DERGASLY, the defendant, in Atlantic City, New Jersey. During that meeting, which was audio-recorded, the following transpired in substance and in part:[1]

    a. The UC stated that the UC needed identity cards such as passports in order to liquidate crypto currency and withdraw cash from financial institutions.

    b. DERGASLY asked if the UC needed passports from any particular countries or regions. DERGASLY stated that he can obtain fraudulent passports, including original passports-- meaning genuine passports containing false information. DERGASLY stated that he possessed a fraudulent genuine Guatemalan passport at his residence. DERGASLY further stated that he could obtain fraudulent, genuine-looking Turkish passports, as well as German or other European passports. DERGASLY stated that he could obtain fraudulent Turkish diplomatic passports and fraudulent European tourist passports. DERGASLY stated that the passports could be used to travel internationally if the bearer acted confident. The passports could be available for pickup in Istanbul, Turkey, within approximately three days.

    c. DERGASLY stated that he could provide fraudulent passports to the UC for approximately $3,500 per passport, with a deposit payment of approximately $50 to $100 per passport.

---

[1] The conversations between DERGASLY and the UC were held primarily in Arabic. The descriptions of statements in this Complaint are based on preliminary and draft translations and summaries of the conversations, including descriptions by the UC, and are subject to revision based on further review and additional information.

   d. DERGASLY described various individuals he knew to be involved in fraudulent loan applications and money laundering.

   e. DERGASLY attempted to contact an individual by phone with whom DERGASLY had dealt with in the past and who could supply the requested passports.

  7. After the January 11, 2022 meeting, HOSAME DERGASLY, the defendant, sent the UC, via an electronic messaging application on DERGASLY's phone, photographs of passports from the United States, Argentina, Peru, Slovenia, Slovakia, and Costa Rica, described by DERGASLY as fraudulent. DERGASLY also sent the UC electronic images of payment confirmations from online payment applications in amounts ranging from approximately $7,000 to $30,000, photographs of a computer screen showing online bank account information, images of online account statements, and a photograph that appears to depict DERGASLY at a casino.

  8. On or about January 19, 2022, the UC and HOSAME DERGASLY, the defendant, met in Manhattan, New York. During that meeting, which was audio-recorded, the following transpired in substance and in part:

   a. DERGASLY asked the UC what information the UC needed on fraudulent passports.

   b. DERGASLY stated that he would not provide visas to go along with the fraudulent passports, but that the passports were of sufficient quality that they could be used to obtain visas.

   c. DERGASLY advised that fraudulent passports of sufficiently high quality to be used to open bank accounts would cost approximately €3,500, and passports of sufficiently high quality to be used for border crossings would cost approximately €5,000 to €6,000. DERGASLY stated that he could provide passports with the original names and information in them, or passports with names and information specified by the UC. DERGASLY stated that he wanted one-half of the payment for a fraudulent passport in advance.

   d. DERGASLY repeated that he possessed a fraudulent Guatemalan passport at his residence, but stated that the individual who provided that passport was currently in jail.

      e.    DERGASLY stated that he had provided fraudulent Kuwaiti passports to assist individuals traveling from Syria to Europe through Turkey. DERGASLY claimed that his fraudulent passports using documentation from Kuwait, the United Arab Emirates, Argentina, and Turkey have worked for travel in various countries in Asia and Europe.

      9.    On or about January 25, 2022, the UC and HOSAME DERGASLY, the defendant, spoke by telephone. During that call, which was audio-recorded, the UC informed DERGASLY that the UC would have photographs and money to purchase a fraudulent Costa Rican passport by the end of the week, and that if the passport was good the UC might order more. DERGASLY asked if the UC wanted a passport that was "100%", meaning the highest quality, and the UC confirmed. DERGASLY stated that the price for a "100%" passport is €5,000. DERGASLY stated that he could provide fraudulent Italian passports as well as Costa Rican passports.

      10.    On or about January 28, 2022, the UC and HOSAME DERGASLY, the defendant, met at a restaurant located in Brooklyn, New York. During that meeting, which was audio-recorded, the following transpired in substance and in part:

      a.    DERGASLY instructed the UC to follow DERGASLY to the bathroom in order for the UC to discreetly provide to DERGASLY a photograph to be used to create a fraudulent passport and payment for the fraudulent passport. The UC provided DERGASLY with two photographs of an individual and approximately $3,500 in U.S. currency. DERGASLY and the UC then returned to the dining area.

      b.    DERGASLY asked what information regarding the user of the fraudulent passport should be used. The UC deferred to DERGASLY to select the information but stated that as much of the original passport information as possible should be retained.

      c.    DERGASLY asked how many more fraudulent passports the UC would order. The UC advised that if the first passport worked without issue, the UC would place additional orders for two to three passports per week. The UC stated that he was also interested in passports for Pakistani and Iranian individuals.

      d.    DERGASLY informed the UC that the individual to whom the fraudulent passport was supplied could use it to exit the country, but that if the individual attempted to use the passport to re-enter the passport would be detected because the individual's fingerprint would not match the fingerprint of the

individual to whom the original passport was issued. DERGASLY stated that the passport would be "100%" original, which I understand to mean that the passport would be a genuine but altered passport.

  e. DERGASLY stated that he could also supply fraudulent Italian passports.

  f. DERGASLY described an example where he procured a fraudulent Costa Rican passport for an Iraqi woman and she was able to cross several borders and travel through Turkey to Europe.

 11. On or about February 3, 2022, HOSAME DERGASLY, the defendant, sent the UC photographs by electronic messaging application showing a Costa Rican passport with the photograph of the individual in the pictures provided by the UC to DERGASLY at the meeting on or about January 19, 2022. In another electronic message that day, DERGASLY advised the UC that DERGASLY was blocked from sending money to Turkey and asked the UC to transfer approximately $1,100 to an individual identified by DERGASLY. DERGASLY then caused the message to be deleted. DERGASLY later advised the UC that he would try to send the money to Turkey "while the office in Istanbul was open," which I understand to be a reference to either a money services business or a hawala (an informal money transfer system).

 12. On or about February 9, 2022, the UC spoke with HOSAME DERGASLY, the defendant, by phone. During that call, in substance and in part, DERGASLY stated that the fraudulent Costa Rican passport would arrive to DERGASLY's residence on February 11, 2022. That same day, DERGASLY also told the UC that DERGASLY would get a price for U.S. green cards. DERGASLY explained that it would not be good to discuss U.S. passports over the phone. DERGASLY sent the UC tracking information for the package containing the fraudulent passport, then caused the message to be deleted.

 13. On or about February 16, 2022, the UC met with HOSAME DERGASLY, the defendant, in Manhattan, New York. During that meeting, which was audio-recorded, the following transpired in substance and in part:

  a. The UC provided DERGASLY with approximately $3,500 in U.S. currency. DERGASLY handed the UC the two passport photographs the UC had previously provided to DERGASLY on or about January 28, 2022, a document that appeared to be a Costa Rican passport, a document that appeared to be a Costa Rican

6

identification card, and a document that appeared to be a Costa Rican driver's license. The passport, identification card, and driver's license bore the image of the person in the photographs the UC had provided to DERGASLY on or about January 28, 2022, and the name and biographical information of another real person.

        b.    DERGASLY stated that the passport number and name on the passport were original and had been chosen to match the approximate age of the person who the UC said would be using the passport.

        c.    DERGASLY stated that fraudulent U.S. passports and green cards could be obtained but that they would be scrutinized if used to travel into or out of the United States.

        d.    The UC showed DERGASLY photographs for ten additional individuals for whom the UC wanted to purchase fraudulent passports. In response to DERGASLY's question about how they would be used, the UC stated that, like the Costa Rican passport DERGASLY had supplied, they would be used to support cartel operations by opening bank accounts or traveling.

        e.    The UC asked if DERGASLY could supply U.S. as well as foreign passports for the ten individuals. The UC advised that the UC did not have funds on his person to pay the deposit for the ten additional passports at that time. DERGASLY asked to keep the photographs for the ten additional passports, and the UC agreed.

WHEREFORE, the deponent respectfully requests that a warrant issue for the arrest of HOSAME DERGASLY, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

s/ Jacqueline Smith by the Court with permission
_____
JACQUELINE SMITH
Special Agent
Federal Bureau of Investigation

Sworn to before me by reliable electronic means (telephone) this __25__th day of March, 2022

_____
HONORABLE BARBARA MOSES UNITED STATES MAGISTRATE JUDGE SOUTHERN DISTRICT OF NEW YORK